# UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 09-144-P-H |
| | ) | |
| JAMES RAYMOND, | ) | |
| | ) | |
| DEFENDANT | ) | |

## FINDINGS OF FACT UNDER FED. R. CRIM. P. 23(c), CONCLUSIONS OF LAW, AND FINDING OF GUILT

The defendant has requested that the court state its specific findings of fact for this nonjury trial as provided by Fed. R. Crim. P. 23(c).

### FINDINGS OF FACT

I find the facts beyond a reasonable doubt.

Early in the morning of July 14, 2007, the defendant James Raymond, a single man in his mid-twenties, took an eleven-year-old girl and her nine-year-old sister unescorted from their home in Auburn, Maine to his home in Auburn, Maine for some amount of time, then drove them to Canobie Lake Park, an amusement park in Salem, New Hampshire, for a day of activity on the park rides, and finally back to their home in Auburn, Maine late at night. Raymond was a public school music teacher in whose class the eleven-year-old had been enrolled during the school year then just ended. She had also participated in the school chorus that Raymond directed. Although Raymond told the girls' mother that someone else would accompany them, in fact no one

else did, on the trip to either the house or the amusement park.  Raymond may have had more than one motive for the entire excursion, but one motive was sexual contact with the eleven-year-old if the opportunity should arise.  The girls were dressed in their bathing suits for water rides at the amusement park.  While in line for a water ride, Raymond touched the eleven-year-old's buttocks intentionally three times, each time saying he was sorry.  For reasons I explain below, I find that he did so not accidentally but for sexual gratification.  On the way home, the eleven-year-old sat in the back seat of the car, the nine-year-old in the front seat.

On August 13, 2007, James Raymond drove the same eleven-year-old girl and her nine-year-old sister from their home in Auburn, Maine to Canobie Lake Park in New Hampshire for another day of activity on the park rides and then back to their home in Auburn, Maine late at night.  Once again, Raymond told the girls' mother that someone else would accompany them, but in fact no one did.  Raymond may have had more than one motive for making the trip, but one motive was sexual contact with the eleven-year-old if the opportunity should arise.  After losing an argument with her younger sister over who could sit in the back seat, the eleven-year-old sat in the front seat for the drive home at night.  Raymond touched her buttocks while she pretended to be asleep.  For reasons I explain below, I find that he did so for sexual gratification.

I base these findings, including the purpose of the touching, upon: (a) the testimony of the eleven-year-old (age fourteen at trial) whom I found to be believable as to the buttocks-touching for each trip; (b) another young girl's testimony that in October 2007 Raymond touched her buttocks under her skirt

at school (defense cross-examination of the girl revealed that this conduct led
to a state conviction for Raymond); (c) Raymond's own admissions, during a
videotaped interview[1] in October 2007, to his physical urge to touch young
girls' buttocks and to masturbating "once or twice a week" about "kids" (he said
"nine times out of ten it's not a kid from school" and that "a little grope up
someone's skirt isn't something that I see as something worth masturbating
to"); and (d) Raymond's demonstrated interest in, and inappropriate behavior
with, this eleven-year-old while sitting at the back of a charter bus at night
returning from a June 2007 school chorus bus trip to the same New
Hampshire amusement park, as testified to by independent observers (two
other students) on the bus.[2]  Both students testified that on that late night trip
a few children were talking about what was going on in the back of the bus,
where Raymond was sitting.  One student witness said that she saw a blonde-
haired girl (later identified by the other student witness as the eleven-year-old)
leaning on Raymond as if he had his arm around her.  (Raymond testified that
she fell asleep with her head on his shoulder, but denied that he put his arm
around her or otherwise touched her.)  The other student testified that she saw
Raymond "rubbing his hand on [the eleven-year-old's] legs and stuff" and that

---

[1] I do not believe that Raymond's statements come within 18 U.S.C. § 3501 (neither party
raised the issue), but if they do, I find that his statements were voluntary.  I also find that he
was not in custody at the time.

[2] Over the defendant's objection, I admitted, under Federal Rule of Evidence 404(b), evidence
concerning Raymond's earlier possession and viewing of child pornography especially involving
young girls, the June 2007 bus trip, his touching of another student's buttocks in October
2007, and statements that Raymond made to investigators in September and October 2007.
This evidence met certain of the permitted purposes of Rule 404(b), namely, to show
Raymond's motive, intent, and absence of mistake or accident, in what occurred on the July
and August trips that were the subject of the Indictment.  (Ultimately, the evidence about
earlier child pornography did not affect my decision.)

his hand got close to her butt.  She also testified that later she and other children asked the eleven-year-old if she liked it and why she had let Raymond do it.  The eleven-year-old testified that on this trip Raymond put his hand inside her shirt on her belly and that she slapped it away (she reported that he said that he was "sorry" and "didn't mean to") and that he put his hand on the back of her leg toward her butt twice.

There was also no evidence that Raymond took any students to an amusement park during the summer of 2007 other than this eleven-year-old, with whom he had behaved inappropriately on the June bus trip, and her sister.  When asked at trial if he touched the eleven-year-old's butt during the July trip, instead of a straight-out denial, Raymond's answer was "I do not recall," and he then went on to discuss the possibilities of, and reasons for, possible accidental touching.  Eventually, he did directly deny that he intentionally touched the eleven-year-old.  Likewise, when asked at trial if he touched the eleven-year-old's butt during the August 2007 trip, Raymond's first answer was "No, not that I recall, unless there was any accidental touching, you know in waiting for the rides, but there was nothing I recall." Eventually, he denied touching the eleven-year-old's buttocks, breasts, or "privates" at any time during the August 2007 trip. I conclude that Raymond had arranged the circumstances to provide an opportunity for touching.

For all these reasons, I conclude that Raymond purposely touched the eleven-year-old's buttocks on both trips and that he did so for sexual gratification, not by accident.

4

The occurrence and the dates of the June, July, and August trips, the identities of the participants in those trips, and the age of the victim were all undisputed.

**CREDIBILITY ISSUES**

The eleven-year-old did not reveal the touchings at the time they occurred. When Raymond's arrest on the state charge involving another girl became public in October 2007, Raymond called the eleven-year-old's mother early the next morning. The mother then called the school to express concern about Raymond's phone call. As a result, a police officer who works at the school interviewed the mother and the eleven-year-old that day. At that time, the eleven-year-old revealed to the officer that Raymond touched her on the June school bus trip, but made no reference to the fact that the July and August trips to the park with Raymond had even occurred. The police officer escorted the eleven-year-old to an evaluation at a sexual assault crisis center in Lewiston about a week later. Then for the first time she revealed that Raymond touched her buttocks three or four times on the July trip, but initially said that she didn't know whether it was accidental or intentional and that nothing else had happened.[3] At trial, she testified that Raymond had touched her buttocks

---

[3] At the first interview at the sexual assault crisis center, the eleven-year-old denied any incidents other than the buttocks-touching on the July trip, but later in either another interview or in her grand jury testimony (the record is unclear), she said that on one of the trips while on a water ride where he sat directly behind her, Raymond placed his arms around her and put his hands on her breasts for a matter of seconds. At trial, she also said that on the other trip while on a water ride and seated behind her, Raymond ran his hands down her inner thigh toward her "private area" and may actually have touched it over her bathing suit. See Trial Tr. 33:6-7, Apr. 20, 2010 (Docket Item 166). As far as the record shows, the accusations of touching her inner thigh or private area did not occur until trial or perhaps preparation for trial. These later revelations that Raymond touched her breasts and inner thigh could be the result of the eleven-year-old surmounting her embarrassment about the
*(continued next page)*

intentionally, and she also testified that Raymond touched her buttocks on the ride home on the August trip.

This is a case where only two people know what actually happened on the two summer trips:  the defendant Raymond and the eleven-year-old.  One (or both) of them testified falsely, a determination that I must make.  Certainly Raymond had motivation to lie.  His liberty and music teaching career both are at stake.  His attempts to explain away the damaging statements that he made about his interest in young girls to the Auburn detective during the videotaped interview were wholly unpersuasive.  His unfulfilled assurances to the girls' mother that others would accompany him on the two trips are highly troubling, regardless of his explanation that at the last minute his fourteen- or fifteen-year-old cousin could not come.  Also troubling is the fact that the only children whom Raymond took to the park that summer were these two, one of whom had been the object of his attentions during the June bus trip incident. Did the victim have motivation to lie?  First, I place no weight on the evidence

---

incidents, or it could be exaggeration/embellishment encouraged by the continuing attention.  I think both incidents very likely happened because her testimony concerning the circumstances was credible.  For example, her testimony about the breast-touching was that Raymond, while sitting behind her on a water ride (a tube ride), wrapped his arms around her chest.  He had his hands on her breasts for the ride down, "[l]ike ten seconds because [the ride] goes so fast." Id. at 44:12.  Her testimony continued:

    Q: And what did you do when he put his arms around you like that?
    A: Well, I kind of like was trying to pull him off, but I couldn't.
    Q: Did he say anything to you while he was doing that?
    A: No.
    Q: Did you say anything to him?
    A: No. I was kind of screaming because the ride was scaring me.
    Q: Did you say anything to him after the ride was over?
    A: No.
    Q: How come?
    A: Because I didn't know what he would do or what I would do.

Id. at 44:13 – 45:3.  But I choose to rest my decision on the buttocks-touching testimony, which alone is sufficient to convict on both counts, and is entirely consistent with Raymond's own admissions about his urges.

that emerged during the trial that Raymond may have embarrassed her at some point during the school year. This appears to have been a non-event to everyone. The eleven-year-old could not remember what the embarrassment was, but testified convincingly that she "let it go" and that her basic view of Raymond was just that he was "weird." (I attach no importance to that term as a child's description of an adult, particularly a teacher.) The mother testified that at a school chorus performance during the school year, Raymond had publicly moved the eleven-year-old to a different location within the chorus, thereby embarrassing her, but that he later went to the eleven-year-old's classroom and apologized to her. Raymond testified that he didn't even know that it was an issue. Children are constantly being "embarrassed" by adults, and I see no reason to conclude that some sort of revenge was at work, especially after months had passed and Raymond ostensibly had been a benefactor to the girls in taking them twice, free of charge, to the amusement park. Second, the defendant argues that this was a young girl and her mother falsely creating their own event after the media furor and intensive law enforcement investigation arose over Raymond's state arrest and after adults— such as law enforcement and others—told the eleven-year-old that Raymond was a bad person. The argument is that the ever-increasing seriousness of the eleven-year-old's accusations as time went by demonstrates that the story grew, with previously innocent events taking on new meaning as a result of those influences. But it is hard to understand why the eleven-year-old and her mother would be willing to demonize Raymond if nothing improper had occurred. From his account, he was nothing but a charitable benefactor who

took the two youngsters to an amusement park at his own expense twice during the summer, something that the eleven-year-old's family was unable to afford on its own.  Why then demonize him?  Instead, I find the eleven-year-old's testimony persuasive on the key elements of the buttocks-touching.  She has consistently testified to her embarrassment over the incidents and was consistently reluctant to talk about them, even at trial.[4]  I find her credible in saying that she did not tell even her mother about the June school bus incident, despite her mother's testimony to the contrary.[5]  Instead, the eleven-year-old said nothing to anyone about that touching (except to a friend, much

---

[4] On cross-examination, she testified:

| | |
|---|---|
| Q: | And what was your answer for why you didn't tell her [the sexual assault crisis interviewer] everything? |
| A: | I was scared and embarrassed. |
| Q. | Okay.  Now, what—when did you stop being scared and embarrassed? |
| A: | I still am scared and embarrassed about it. |
| Q. | Okay.  What's different now as compared to when you met with that evaluator? |
| A: | I'm older.  I got them to help me learn why I wanted to be in here. |
| Q: | Well, when you were in that Spurwink evaluation, you told her that Jim Raymond touched you on the leg on the first trip? |
| A: | Yeah. |
| Q: | So why would you be scared and embarrassed to say that he did it on the second trip?  What's the difference? |
| A: | Because I felt that if I told her he did it again, I would get more embarrassed because I was embarrassed to talk to her—to tell her the first time. |

Trial Tr. 80:11 – 81:5, Apr. 20, 2010.  It is not surprising that an eleven-year-old might be reluctant to accuse a teacher.  I have also reviewed the medical records and recognize the issues the eleven-year-old confronted earlier in her life (auditory and visual hallucinations), but I find that they were properly controlled by medications at the time of the charged offenses.  At the time of trial, she was no longer in need of medications.  Finally, I have considered the inconsistencies that the defense lawyer properly pointed to in her testimony, but I find that they do not cast doubt on her overall reliability.

[5] I need not go into the reasons why the mother, who has three caseworkers (a state court-appointed guardian ad litem was in the courtroom during her testimony), may have felt it desirable to testify in that fashion.  It is difficult to understand why the mother would allow the July and August trips to occur if the eleven-year-old previously had reported Raymond's inappropriate attention to her on the June trip.

later) until the police officer visited her home the day after Raymond's arrest in October. Then, the eleven-year-old said that she knew why the officer was there and proceeded to describe what happened on the June school bus trip. I note that as to that trip, she knew that other students had observed Raymond's conduct with her. But she had no reason to think that anyone knew of the July and August trips and, consistent with her embarrassment about the situation, she did not reveal them to the police officer. It is true that the eleven-year-old did not reveal any summer buttocks-touching until the interview at the sexual assault crisis center, and then only as to the July trip. Although the videotape of that interview is not in evidence, no challenge has been made to the nature of the questions posed to the eleven-year-old there, such that I should be suspicious that this is a planted memory, and there is no suggestion that, when she described this behavior, she knew of Raymond's own admissions about his urges to touch young girls' buttocks. I also find persuasive her testimony that Raymond touched her buttocks on the ride home in August. In sum, I find that Raymond singled her out for attention starting with the June bus trip, that he proceeded to arrange circumstances so that he could continue his attention toward her, and that he intentionally touched her buttocks for sexual gratification on the July and August trips to New Hampshire.

### CONCLUSIONS OF LAW

Under New Hampshire law, intentionally touching, through clothing, the buttocks of a child under 13 years of age, where the touching can reasonably be construed as being for the purpose of sexual arousal or gratification,

amounts to felonious sexual assault, a class B felony.   N.H. Rev. Stat. Ann. §§ 632-A:3(III), 632-A:1(IV) (2007).

Under Maine law, touching buttocks through clothing for the purpose of arousing or gratifying sexual desire, when the victim is a child under 14 and the actor is at least 5 years older than the child, is a Class D crime of unlawful sexual touching.   17-A Me. Rev. Stat. Ann. §§ 260(1)(C), 251(1)(G) (2007).[6]

To use the appellate caselaw's language, for each of the summer trips, the illicit sexual touching motive was "one of the efficient purposes of the interstate transportation."   United States v. Ellis, 935 F.2d 385, 390 (1st Cir. 1991).   It was "not a mere incident," but was "at least one of the defendant's motivations for taking the trip in the first place."   Id. (citation omitted); see also United States v. Vang, 128 F.3d 1065, 1072 (7th Cir. 1997) (explaining that the motivation must be "dominant" in the sense of "'significant' or 'compelling' or 'efficient'" but need not be preeminent).[7]

Therefore, on each occasion, the defendant James Raymond knowingly transported in interstate commerce a person under eighteen years of age with the intent that that person engage in sexual activity (namely, as the recipient of his sexual gratification touchings) for which the defendant Raymond could be

---

[6] I do not determine whether it is also a Class D crime under 17-C M.R.S.A. § 260(1)(F) (2007) (teacher with instructional, supervisory, or disciplinary authority over a student under age 18). The crime charged here occurred during the summer while school was not in session.

[7] Strictly speaking, it was not necessary for the government to prove that Raymond actually touched the eleven-year-old in violation of Maine or New Hampshire law.   The government needed only to prove that Raymond had the intent to involve the eleven-year-old in prohibited sexual conduct when he made the interstate trips.   Here, the evidence showed both the intent and the acts.

charged with a criminal offense.   That is a violation of 18 U.S.C. § 2423(a) (2006).

**FINDING OF GUILT**

Consequently, I find the defendant James Raymond guilty as charged in each of Counts 1 and 2 of the Indictment.

I **ORDER** the preparation of a presentence report.

**SO ORDERED.**

**DATED THIS 7TH DAY OF MAY, 2010**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

11