UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JAMES RAYMOND, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | 2:09-cr-00144-DBH |
| | ) | 2:13-cv-00298-DBH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

James Raymond has filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 232.) He was convicted of two counts of transporting a minor with intent to engage in criminal sexual activity, see 18 U.S.C. § 2423(a), following a bench trial, and his conviction and twelve-year sentence were upheld on appeal. United States v. Raymond, 697 F.3d 32, 35 (1st Cir. 2012). Raymond argues in his section 2255 motion that he received ineffective assistance of counsel at trial because (1) defense counsel elicited evidence of prior state convictions through cross-examination of the government's first witness, notwithstanding that the government had told the court it did not intend to introduce the conviction and the court had excluded a bail violation that was later admitted on the government's cross-examination of defense witnesses; (2) counsel failed to adequately cross-examine the victim and the victim's mother; (3) counsel failed to adequately investigate; and (4) counsel's appellate performance was deficient and prejudicial because he failed to make any meritorious arguments. I recommend that the motion be denied.

## I. Background

### A. Facts

The facts of the crimes are set forth in the First Circuit's opinion on the appeal, Raymond, 697 F.3d at 35-36, and this court's decision, United States v. Raymond, 710 F. Supp. 2d 161 (D. Me. 2010). Raymond, who was the victim's public school music teacher, transported the victim, an eleven-year old girl, unsupervised from Maine to New Hampshire and back on two occasions, one in July 2007 and the other in August 2007. His destination was a water park in New Hampshire. He touched the girl intentionally on the buttocks through clothing or a bathing suit three times on the July trip and once on the August trip. The trial court found that at least one of Raymond's motives on these two occasions was "'sexual contact with the eleven-year old if the opportunity should arise.'" 697 F.3d at 35 (quoting Raymond, 710 F. Supp. 2d at 162-63). The victim's nine-year-old sister also was present on those trips, but there were no allegations or prosecution related to her. Thus, the two counts related to two separate incidents with a single victim. (Tr. 3/12/10 at 3-4, ECF No. 210.)

### B. Pretrial Proceedings

During pretrial proceedings, counsel represented to the court that news of the state investigation broke in late October 2007 for the entirely different incidents that led to state charges involving three other victims. (Tr. 3/12/10 at 14-17, ECF No. 210.) That news resulted in three witnesses, all middle school age students on a June 2007 school chorus bus trip, coming forward with their information about Raymond's actions on the bus with the victim in this federal prosecution. (Tr. 3/12/10 at 17.) The victim in this federal prosecution came forward with her accusation in response to law enforcement questioning of her, which occurred after the other three students on the June 2007 bus trip told about Raymond's touching of her. In the state

court prosecution that ensued on the unrelated charges involving other victims, Raymond was released on pretrial conditions that prohibited contact with minors, and in April 2008 he was charged with violating those conditions after he had an encounter in a grocery store, caught on the store's videotape, with the victim of this federal prosecution. (Motion in Limine at 7-9, ECF No. 44.) He was convicted in state court in August 2008 of two counts of unlawful sexual touching and three counts of assault involving the three other victims following a jury trial. (Raymond, 697 F.3d at 36 n.1.)

Raymond's ineffective assistance claims concern counsel's decision to ask the government's first witness about Raymond's state convictions. The two pretrial hearings, held on March 12 and 18, 2010, provide relevant context for counsel's actions at trial concerning the convictions. (ECF Nos. 210, 211.) During both of the pretrial hearings, the court and the parties proceeded on the assumption that there would be a jury trial. As the court noted in the pretrial hearings, Raymond did not dispute that the two trips from Maine to New Hampshire occurred; rather, the contested issue was criminal intent. (Tr. 3/12/10 at 25; Tr. 3/18/10 at 9.) The court noted that "it's obvious that intent or motive cannot be proven directly in a case like this. Instead, the Government is entitled to turn to circumstantial evidence from which the jury can be asked to infer the defendant's motive and intent in July and August [of 2007]." (Tr. 3/18/10 at 12.)

The government filed a motion in limine to introduce evidence of intent, pursuant to Fed. R. Evid. 403 and 404(b).[1] (Motion, ECF No. 44.) The government stated that its motion was not

---

[1] Fed. R. Evid. 404(b) states in pertinent part:

**(1) Prohibited Uses.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) Permitted Uses.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

3

based on Fed. R. Evid. 413 or 414, which pertain to sexual crimes specifically and which have been held to permit evidence of propensity. (Tr. 3/12/10 at 3.) See Martínez v. Cui, 608 F.3d 54, 59 (1st Cir. 2010) (noting that with Rules 413, 414, and 415, "[t]he drafters' purpose was to supersede Rule 404(b)'s prohibition on evidence of like conduct showing propensity in sexual assault cases"). Thus, the government did not seek to have the evidence introduced to show Raymond's propensity, pursuant to Rule 413 or 414, but rather to show his intent, pursuant to Rule 404(b).

Of the five pieces of evidence proposed by the government, the court ultimately based its findings on four: (1) the victim's trial testimony (she was age fourteen at the time of trial); (2) other students' testimony concerning a June 2007 school bus trip in which they saw Raymond touching the victim on the legs and near the buttocks; (3) the testimony of one of the victims involved in the state prosecution, who testified that Raymond had touched her inappropriately at school in October 2007; and (4) videotape of a law enforcement interview, in which Raymond confessed in October 2007 to a physical urge to touch young girls' buttocks and to masturbation about children. Raymond, 697 F.3d at 35-36; 710 F. Supp. 2d at 163.

At the pretrial hearings, the government clarified that it sought to introduce testimony of all three of the victims in the state case, including the victim of a 2005 incident, but not the conviction itself. The court asked, "So you're not proposing that the conviction itself come in or that their trial testimony come in." The government answered, "I'm not at this point, Your Honor. I think – I believe that the most appropriate way would be to have them testify directly." (Tr. 3/12/10 at 8.) Raymond's counsel argued for voir dire of the three state court victims. (Tr. 3/12/10 at 17.) As an alternative, the government offered the entire state court trial testimony for the court to consider in deciding the motion in limine, and defense counsel did not object. (Tr.

4

3/12/10 at 34.) The court ruled that it would exclude testimony about the state conviction for the 2005 crime because it was remote in time and might be used by the jury as character or propensity evidence. (Tr. 3/18/10 at 12-13.) It allowed testimony about the two 2007 incidents that led to the state court convictions as evidence of Raymond's intent near in time to the crimes involved in the federal prosecution. (Tr. 3/18/10 at 13.)

Additionally, the court excluded the grocery store videotape of Raymond violating his state pretrial bail conditions with the victim of this federal prosecution. (Tr. 3/18/10 at 12.) The court decided that the significance of this encounter was ambiguous and it was of only marginal probative value under the Fed. R. Civ. P. 403 analysis because the government was not planning to offer evidence of the state court prosecution or conviction. (Tr. 3/18/10 at 14.)

**C. Bench Trial**

Raymond filed a waiver of his right to a jury trial on March 29, 2010, i.e., after both of the pretrial hearings concerning the government's motion in limine on evidence of intent. The court approved the waiver. (ECF No. 86.) Counsel's defense consisted of attacking the credibility of the victim and putting on witnesses to Raymond's good character.

The government's first trial witness was one of the victims in the state court prosecution, a girl age ten at the time of the federal trial, who testified that one day at school, while she was in a music class taught by Raymond, he put his hand up her skirt and touched her buttocks over her underwear. (Tr. 4/20/10 at 22-24, ECF No. 212.) That girl told her mother, and an investigation was launched. (Tr. 4/20/10 at 27-28, ECF No. 212.)

On cross-examination, defense counsel asked the witness questions about the incident that led to the state court prosecution, then he asked her whether she had testified in Raymond's trial in state court, which she said she had. (Tr. 4/20/10 at 41, ECF No. 212.) She later testified

5

that he was convicted. (Tr. 4/20/10 at 48, ECF No. 212.) Counsel also elicited from her that she had been coached by the prosecutor. She acknowledged that other people told her what a difficult process it was for someone her age and that they told her she was brave to go through with it. (Tr. 4/20/10 at 42, ECF No. 212.) She acknowledged that people told her that Raymond "likes to molest children" and told her that he was a "bad person." (Tr. 4/20/10 at 42, ECF No. 212.) Counsel cross-examined her about her memory of the incident for which Raymond was convicted in state court, and what she told others about it. (Tr. 4/20/10 at 46, ECF No. 212.) Counsel elicited that the witness's mother was not satisfied with Raymond's sentence for the state conviction. (Tr. 4/20/10 at 48, ECF No. 212.)

Counsel's cross-examination of the victim in this federal prosecution focused on attacking her credibility. He asked about her mental health history. (Tr. 4/20/10 at 52, ECF No. 166.) He also inquired about her changing her story over time and about others who told her Raymond was a "bad person" and that he had "abused people." (Tr. 4/20/10 at 75-76, 79-80, 86-87, ECF No. 166.)

Cross-examination of the victim's mother focused on a prior investigation of abuse of the victim, where the results were that there had not been abuse, according to the mother. (Tr. 4/22/10 at 26, 34, ECF No. 167.) Counsel also asked the mother about the victim's mental health history. (Tr. 4/22/10 at 29, ECF No. 167.) He elicited that the victim told her about Raymond's behavior on the June 2007 bus trip right after it occurred. (Tr. 4/22/10 at 33-38, ECF No. 167.) Counsel then elicited that in spite of that communication, the mother let the victim go on the trips that eventually led to the federal charges, thinking that it was a group trip. (Tr. 4/22/10 at 42-43, ECF No. 167.) Counsel also cross-examined her about the timing of her disclosure to law enforcement, i.e., that she did not immediately report what the victim told her

about Raymond making the victim "feel uncomfortable" on the bus trip. (Tr. 4/22/10 at 47-49, ECF No. 167.)

The defense put on its case, which was comprised of character witnesses. The defense witnesses were (1) a mother of two children who were music and theater students of Raymond's and who chaperoned on the June 2007 school bus trip (Tr. 4/22/10 at 100-06, ECF No. 214); (2) a retired elementary school teacher who rented an apartment to Raymond for two years in 2003 or 2004 (Tr. 4/22/10 at 115-17, ECF No. 214); (3) a middle school math and science teacher and mother of two girls, who knew Raymond from children's theater and music lessons for her daughters (Tr. 4/22/10 at 126-28, ECF No. 214); (4) an x-ray technician at a hospital with two daughters who were in the school band with Raymond when they were younger (Tr. 4/22/10 at 139, ECF No. 214); (5) a laboratory technician with a daughter who had been in some of Raymond's choral productions and plays as a young girl (Tr. 4/22/10 at 146-47, ECF No. 214); (6) a retired public school music teacher and music association president who at one point hired Raymond as an assistant marching band director (Tr. 4/22/10 at 154-57, ECF No. 214); (7) a woman who was president of the music boosters with a daughter in a marching band (Tr. 4/22/10 at 166, ECF No. 214); (8) a woman who had daughters in the marching band when Raymond was on staff there (Tr. 4/22/10 at 175, ECF No. 214); (9) a cousin of Raymond's who was on the June 2007 bus trip (Tr. 4/22/10 at 182); and (10) a woman who chaperoned the June 2007 bus trip and whose older daughters had been music students of Raymond's (Tr. 4/23/10 at 7-14.)

On cross-examination of these defense character witnesses, the government asked whether they were aware that Raymond had admitted to touching two to four girls' legs and bottoms, that he had admitted membership in child pornography clubs, that he had been convicted of assault and unlawful sexual touching of three students, and that he had been arrested

7

for violating the terms of his release. (Tr. 4/22/10 at 111-12, 123-24, 135-36, 143-44, 152-53, 161-62, 172-73, 177-78, ECF No. 214; Tr. 4/23/10 at 16-18, ECF No. 215.) On redirect, the witnesses who were asked about the government's evidence testified that these facts did not change their opinion of Raymond's good character. (Tr. 4/22/10 at 113, 137, 162, 173.)

**D. Sentencing**

Raymond's revised presentence investigation report revealed that two convictions were considered for criminal history category (CHC) purposes: the 2008 Maine conviction on two counts of unlawful sexual touching and a 2008 Maine conviction for violating the conditions of release (PSI Report at 7-8). The Court found that, at a total offense level 38 and CHC II, Raymond's sentencing guideline range was imprisonment for 262-327 months, and a mandatory minimum of 10 years applied (Tr. 11/4/10 at 34, ECF No. 221). In light of all the factors, the Court sentenced Raymond to concurrent terms of 144 months in prison to be followed by a lifetime of supervised release (Tr. 11//4/10 at 43, ECF No. 221). The sentence was obviously well below the guideline range.

**E. Appeal**

On appeal, Raymond made three arguments concerning his conviction. Raymond, 697 F.3d 35-41. First, he argued that evidence of his contact with the victim during the June 2007 bus trip and his inappropriate contact with the other student in October 2007 was inadmissible under Fed. R. Evid. 404(b), and the district court abused its discretion in admitting that evidence. Id. at 36-37. The First Circuit held that although the claim was not preserved, and was reviewable for plain error, there was "no error, plain or otherwise," with the admission of the evidence. Id. at 37-38. Raymond's second claim was that the court unduly restricted his cross-examination of certain government witnesses. The appeals court thought otherwise. Id. at 39-

40. Finally Raymond challenged his sentence, claiming he should have received the mandatory minimum sentence of ten years. Id. at 40. The appeals court rejected the challenge, concluding the sentence "though severe, was not Draconian." Id. at 40-41.

## II. Discussion

To succeed on his ineffective assistance of counsel claims in the context of this section 2255 petition, Raymond "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012). The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests. Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011). A district court reviewing such claims need not address both prongs of the test because a failure to meet either prong will undermine the claim. Strickland v. Washington, 466 U.S. 668, 697 (1984).

As for the "cause" test, the court must be "'fairly tolerant'" of counsel's performance because the Constitution does not guarantee a perfect defense. Moreno-Espada v. United States, 666 F.3d 60, 65 (1st Cir. 2012) (quoting Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994)). The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'" Bucci, 662 F.3d at 30 (quoting Strickland, 446 U.S. at 688-89). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'" Id. (quoting Strickland, 446 U.S. at 689).

The "actual prejudice" test requires a showing "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The court must consider "'the totality of the evidence before the judge or jury'" when measuring the prejudicial effect. Turner, 699 F.3d at 584 (quoting Dugas v. Coplan, 506 F.3d 1, 9 (1st Cir. 2007).

> Where, as here, a petitioner asserts that counsel failed to introduce evidence or challenge the credibility of government witnesses on cross-examination, we consider three factors: "first, the strength of the prosecution's case; second, the effectiveness of the defense that was presented at trial; third, the potential value of the new evidence and new avenues for cross-examination 'in undermining the credibility of the government witnesses' testimony.'"

Id. at 584 (quoting Dugas 506 F.3d at 9)). A habeas petition is not a substitute for an appeal. Berthoff v. United States, 308 F.3d 124, 127 (1st Cir. 2002).

In making its assessment as to whether an evidentiary hearing is warranted, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" Owens v. United States, 483 F.3d 48, 57 (1st Cir. 2007) (quoting Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002)). "To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" Id. (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)). It is appropriate to expect the petitioner to supply the court with salient details of his claim prior to permitting a hearing. Id.

A. **Admission of the State Convictions and Bail Conditions**

Raymond argues that counsel was ineffective because he elicited, in cross-examination of the government's first witness, who was one of the child victims from the state prosecution, that

10

Raymond was convicted in 2008 in state court of assault and unlawful sexual touching of the victim who testified that Raymond touched her inappropriately at school in October 2007. (Motion at 4; Attachment, ECF No. 232-1.) I conclude that it was reasonable and did not reflect deficient performance for counsel at the bench trial to elicit evidence of the prior state conviction.

The pretrial proceedings set the stage for counsel's decision. First, defense counsel had to respond to the government's request that it be permitted to introduce, in its case in chief, the victims from state court to testify to Raymond's actions. Defense counsel requested voir dire of the victims, but his decision to acquiesce to the prosecutor's suggestion that the court read the transcript rather than conduct voir dire was not an unreasonable decision. Experienced defense counsel would be well aware that pressing his request for voir dire of the child witnesses was a double-edged sword and might well result in them obtaining enhanced credibility at trial. The decision to acquiesce to the prosecutor's position regarding the transcript resulted in the exclusion of one witness's testimony. That ruling was favorable to Raymond. The record is clear that the trial judge, the prosecutor, and defendant's attorney understood that the testimony was being admitted as evidence going to intent and not as evidence of prior bad acts to establish the defendant's propensity to commit such acts. There is nothing in the record that suggests the trial judge considered the fact of the state court conviction for any other purpose and there is certainly nothing to indicate that he considered the fact of the state conviction in assessing witness credibility, contrary to Raymond's assessment. (Section 2255 Motion at 2-3; Reply at 3, ECF No. 244.)

In these circumstances, the fact that counsel elicited the prior conviction on cross-examination was clearly a strategic choice. He was attempting to develop a line of inquiry

showing that the mother of the victim in state court was not satisfied with the result in the state court (presumably with the sentence imposed) and thus providing a reason for the girl to embellish her testimony or provide negative information about Raymond in the federal prosecution. (Tr. 4/20/10 at 48-49, ECF No. 212.) His questioning of the child witness did not fall below the level of competency expected from a trial attorney, and in the context of this bench trial it was a reasonable strategic choice. Likewise, as the government points out in its response, Raymond's decision to pursue a defense based on his good character, through the introduction of character witness testimony, would have likely opened the door for admissibility of those witnesses' knowledge of the fact of his state convictions in any event. (Response at 19, ECF No. 243.) Pursuing a defense that was based in part on the testimony of character witnesses was reasonable even though it may have opened the door to the admission of the state court convictions. See United States v. Madrid Ramirez, 535 F.2d 125, 128 (1st Cir. 1976). That defense counsel preempted the government's inquiry into those convictions was obviously a tactical decision. I conclude that it was not unreasonable or deficient.

The issue surrounding the charge relating to bail conditions is also a nonstarter. For one thing, the judge did not rely upon that incident in his findings, tending to suggest he viewed it as of minimal or no relevance and in fact, as Raymond emphasizes, he excluded this evidence in his original motion in limine ruling. But even more significant is the fact that the defense based on character witness testimony clearly would have led to cross-examination of the witnesses about their knowledge of talk of this incident. The Government's impeachment question simply consisted of asking the character witnesses if they had heard of Raymond's *arrest* for violation of bail conditions. There was no "prejudice" to Raymond in this cross-examination. Raymond himself acknowledges that he elected to proceed with a bench trial because of a judge's ability to

"sandbox" (Reply at 1-2) inadmissible evidence heard prior to trial from the evidence actually admitted at trial. The trial judge excluded the grocery store bail violation incident because he found it "too ambiguous in its significance." (Tr. 3/18/10 at 14.) The fact that the prosecutor mentioned this incident in his cross-examination of character witnesses did not prejudice the defendant's case because there is no suggestion in the evidence or the judge's findings that the grocery store incident was ever given any weight at trial. In fact the character witnesses responded that the knowledge did not affect their opinions of Raymond's character which pretty much seems in line with the trial judge's finding at the in limine hearing that the events were too ambiguous to be probative at trial.

### B. Cross-examination of Victim and Her Mother

It is apparent that Raymond's trial strategy relied heavily upon his counsel's attempts to discredit the victim. Toward that end the defendant's attorney established that the victim initially did not come forward with the substance of her trial testimony close in time to when the events occurred. The trial judge was also well aware of the defense theory that the victim fabricated the story only after other young girls had made the same types of accusations against Raymond. The findings of fact discuss credibility issues in depth, and, as is often the case, the defendant's own conduct seemed to have weighed heavily when the judge considered the competing credibility factors. Raymond, 710 F. Supp. 2d at 164-66. As the judge noted, the victim had no reason to know that Raymond had himself admitted to the police that he had an inordinate interest in young girls' buttocks, yet her description addressed that very behavior. The judge also relied upon the totality of the circumstances when making his credibility determination, including, significantly, the fact that Raymond chose to single out the victim for

his attention during the summer of 2007, beginning with the bus trip and continuing through the July and August trips to New Hampshire.

The crux of this particular claim is an obvious inadvertent mistake of defense counsel which appears on the record. The victim's mother apparently told the victim that this was either somewhat like being in or her chance to be in a television show dealing with crime (CSI). (Tr. 5/4/10 at 41-42, ECF No. 218.) The attorney failed to attempt to cross-exam either the mother or the victim about this statement, yet he mentioned the statement in his closing argument, plainly believing that it had been introduced. This evidence, if properly admitted at trial, would have been in aid of the defense strategy which was to suggest that the victim had made up these allegations after the fact when the case became a cause célèbre in the local media. Counsel worked diligently to develop that strategy and obviously devoted considerable thought to his cross-examination.[2]

Whether counsel's "mistake" in forgetting to include this particular factual episode in that cross-examination somehow unduly prejudiced the defendant appears very unlikely to me, but the trial judge who was also the fact finder at trial is in the best position to make that assessment. Not insignificant to the resolution of the pending motion is the First Circuit's counsel that when a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). As a matter of law, counsel's mere inadvertent mistake pertaining to one peripheral impeachment matter would not normally equate with deficient performance for

---

[2] The government notes that any reference to the victim perceiving herself to be in a CSI show would have been merely cumulative of other grounds for discrediting her, which included her initial silence with respect to Raymond's acts toward her, her history of mental health treatment that produced two hospitalizations, her evolving statements, and her purported experience hearing voices telling her to harm other children. (Response at 23, ECF No. 243.)

Strickland purposes. See Yarborough v. Gentry, 540 U.S. 1, 6 (2003) ("[E]ven if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.")

### C. Failure to Adequately Investigate

Raymond complains that defense counsel's investigation of the facts was inadequate in three separate respects: (1) he failed to investigate the victim's mother's boyfriend who might have been a valuable witness; (2) he did not use his investigative skills to obtain photographs of the actual interior of the school bus which would have helped to establish that other students would not have been able to see what they said they saw on the field trip; and (3) he failed to investigate other students and other chaperones who went on the trip and might have had something to add to the evidence. Raymond asserts that the boyfriend was present, he would have been able to testify about the conversation he had with the victim's mother at the Fourth of July fireworks celebration when planning the New Hampshire trip, and he would have corroborated Raymond's version of those events rather than the mother's version. (ECF No. 232-3.) He also postulates that the boyfriend would have been able to opine about how excited the girls were to go on the second trip to New Hampshire which would contradict the victim's testimony about her reluctance to go on that trip.

I fail to see how this testimony, even if the boyfriend would have been able to testify as Raymond suggests, would have been likely to change the outcome of the trial and thus I do not find that the failure to pursue this line of investigation resulted in any prejudice. The credibility contest was between the victim and Raymond, and the mother's testimony was peripheral at best. Her account differed from her own daughter's in a number of respects and the discrepancies

15

between Raymond and her over the arrangements for the trip have nothing to with the fact that ultimately both New Hampshire trips involved only the defendant and the two young girls.

The defense attorney's failure to obtain photographs of the inside of the bus did not create any prejudice. The configuration of the inside of a bus is a matter of common knowledge for most people. As competent counsel, the defense attorney used a diagram of the bus to ostensibly show that neither of the student witnesses were in a position to observe what Raymond and the victim were doing. Those children's positions in relation to Raymond were already apparent to the factfinder and the defense clearly made its point that they were not in a position to see what they said they saw. A picture is not necessarily worth a thousand words when the point being made is straightforward and easy to grasp. The trial judge accepted the girls' testimony in spite of the apparent impediments to them obtaining a clear field of vision, apparently accepting their testimony that they stood up to get a better view.

Raymond's final volley in connection with this investigation claim is that his attorney should have interviewed more witnesses, both chaperones and students, who were on the bus. Raymond does not identify what information any of these witnesses could have provided, except perhaps that they did not see anything untoward happening between Raymond and the victim. Three of the chaperones did testify on behalf of Raymond. There would be no benefit to the defense to have additional witnesses testify, as did these witnesses, that they neither saw any inappropriate behavior nor heard any commotion on the bus, contradicting the two student witnesses who did testify regarding the incident.

Nor can I identify any prejudice from counsel's failure to call other students on the chorus trip who might have been seated closer to Raymond and the victim. The most important witness to Raymond's behavior on the bus was the victim herself. A parade of child witnesses to

16

the chorus trip who might corroborate her testimony would only serve to make her more credible, not less so. In a case which had received as much local media attention as this one apparently did, experienced defense counsel would understand the risks in "investigating" child witnesses who might wind up with angry parents reporting the contact to the prosecutor. There would be the constant danger of unearthing more witnesses favorable to the prosecution by conducting such a wholesale investigation without any guidance from Raymond as to the important witnesses to contact. If Raymond knew prior to trial of a student witness from the bus with specific knowledge, he apparently did not alert counsel to that child's existence.

### D. Failure to Raise Meritorious Issues on Appeal

The First Circuit primarily addressed the Rule 404(b) in limine ruling in its appellate decision. Even though the earlier objection had not been renewed after the tentative in limine ruling and thus was technically considered to have been forfeited, which potentially was error on the defendant's attorney's part, the court nevertheless considered the in limine rulings on the merits and found no error, "plain or otherwise" in the decision to admit the various "other acts" evidence. Raymond, 697 F.3d at 37-39. Better performance by trial counsel in preserving the issue would not have produced a different result. The other two issues raised by appellate counsel did not generate as much discussion in the appellate decision, but were addressed by the court and were never labeled as "frivolous" by anyone except the defendant.

Raymond identifies no other meritorious issue that counsel could have raised on appeal. Neither does my independent review of the record suggest that such meritorious issues existed or would have resulted in reversal if only counsel had made the argument. Raymond laments that it is unfair to expect him, a nonlawyer, to identify in the context of this section 2255 proceeding what those viable issues may have been. However, when no issues are readily discernible by this

17

court it is impossible to find that counsel handled the appeal ineffectively by raising the three issues he chose to raise. His arguments generated a sixty-four page appellate brief by the government (ECF No. 243-1) and a published opinion from the court of appeals. In these circumstances it appears that counsel's performance was more than adequate.

### III.    Conclusion

For the reasons stated above, no evidentiary hearing is warranted under Rule 8 of the Rules Governing Section 2255 Cases and I recommend that the Court deny Raymond's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 23, 2014